UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IVAN R. VERCHER,

Petitioner,

v.

SHAWN HATTON[1],

Respondent.

No.  2:18-cv-1915-EFB P

ORDER AND FINDINGS AND
RECOMMENDATIONS

Petitioner is a California state prisoner who, proceeding without counsel, brings an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He was convicted, after a jury trial, in the Shasta County Superior Court of: (1) three counts of second degree armed robbery (Pen. Code § 211); (2) one count of second degree commercial burglary (Pen. Code § 459); and (3) firearm enhancements (Pen. Code § 12022(a)(1)).  The court found true two enhancements for prior serious felony allegations (Pen. Code § 667).  Now, petitioner argues that: (1) the trial court erred in denying him a bifurcated trial on his prior felony convictions before evidence of the same was heard by the jury; (2) he was denied his constitutional right to testify;

---

[1] Petitioner named the "California Attorney General" as respondent.  ECF No. 1.  In his answer, respondent states that the proper respondent – that is, the warden of the institution where petitioner is confined – is Shawn Hatton.  Thus, by operation of Federal Rule of Civil Procedure 25(d), Shawn Hatton is automatically substituted as the respondent in this action.

1   (3) the trial court erred in admitting prior conduct evidence;[2] (4) the trial court erred in excluding

2   impeachment evidence relating to Officer Jacoby; and (5) his counsel rendered ineffective

3   assistance by failing to raise his claims regarding prior conduct evidence on appeal and for failing

4   to 'federalize' his claims regarding his inability to testify and exclusion of impeachment

5   evidence.

6          For the reasons stated below, the petition must be denied in its entirety.

7                                    FACTUAL BACKGROUND

8          During the summer of 2011, several medical marijuana collectives in Redding were

9   robbed.  Law enforcement investigating these incidents identified petitioner as a person of interest

10  after his vehicle – a white Range Rover - was sighted near one of the robberies.  It was decided to

11  place him under surveillance.  At the time, petitioner was living in a Redding apartment with his

12  girlfriend – Janel – and her sixteen-year-old son – Caleb.

13         At noon on September 15, 2011, law enforcement began surveillance of petitioner.  At

14  6:00 p.m., officers watched petitioner drive Janel's car – a red Dodge Charger – to a bank parking

15  lot.  A nearby marijuana collective – Trusted Friends – was visible from the lot.  While at the lot,

16  petitioner was seen talking on his cell phone for several minutes.  After concluding his call, he

17  left and went home.

18         Petitioner returned to the bank parking lot shortly thereafter – at approximately 6:30 p.m.

19  He again talked on his cell phone, this time exiting the vehicle and looking southeast toward

20  Trusted Friends collective.  At 6:43 p.m., employees at Trusted Friends were preparing to close

21  for the night.  Two masked men entered the collective.  They were subsequently identified as Josh

22  Wright and Elijah Potillor, both of whom were friends with Caleb.  Elijah levelled a gun at the

23  employees.  Josh held a cellphone.  The two men passed duffel bags to the employees and told

24  them to fill the bags with marijuana.  They also demanded and received cash.

25  /////

26  /////

27  _____

28         [2] Petitioner raised three separate claims regarding prior conduct evidence.  They will be
    specified *infra* and discussed together.

2

At about the time of the robbery, petitioner left the bank parking lot in the Charger. The surveilling officer – Jacoby – followed petitioner on foot for a short period of time. When he received radio notification that Trusted Friends had been robbed, Jacoby radioed for other units to stop petitioner. The Charger was stopped at about 6:49 p.m. and petitioner was placed under arrest at 6:56 p.m. After officers had detained petitioner, his phone received multiple calls from Caleb and Josh.

Police subsequently interviewed petitioner. He admitted to knowing Josh was committing a robbery and to being on the phone with Josh for about seven minutes during the robbery. Petitioner claimed, however, that Josh was not telling him any specifics about the robbery during the call. As to his reason for being in the bank parking lot, petitioner told his interviewers that he had simply stopped there to urinate.

Police also interviewed Caleb. He stated that petitioner laid out the plan for the Trusted Friends robbery. Caleb told interviewers that petitioner was to get a "cut" of the proceeds of that robbery.

Elijah was also interviewed. He admitted that Josh was on the phone during the robbery. Though he stated that he did not know who Josh was speaking to, he recalled Josh asking whether "it was clear" and whether they were "good to go." Elijah described the phone conversation as Josh speaking to someone who was watching them.

<u>STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA</u>

I.      <u>Applicable Statutory Provisions</u>

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) constitutes a "constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus." *(Terry) Williams v. Taylor*, 529 U.S. 362, 412 (2000). It does not, however, "imply abandonment or abdication of judicial review," or "by definition preclude relief." *Miller El v. Cockrell*, 537 U.S. 322, 340 (2003). If either prong (d)(1) or (d)(2) is satisfied, the federal court may grant relief based on a de novo finding of constitutional error. *See Frantz v. Hazey*, 533 F.3d 724, 736 (9th Cir. 2008) (en banc).

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. *Harrington v. Richter*, 562 U.S. 86, 99-100 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state law procedural principles to the contrary. *Id.* at 784-785 (citing *Harris v. Reed*, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

A.      "Clearly Established Federal Law"

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. *Lockyer v. Andrade*, 538 U.S. 63, 71 72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in issue is clearly established by Supreme Court precedent." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

B.      "Contrary To" Or "Unreasonable Application Of" Clearly Established Federal Law

Section 2254(d)(1) applies to state court adjudications based on purely legal rulings and mixed questions of law and fact. *Davis v. Woodford*, 384 F.3d 628, 637 (9th Cir. 2003). The two

clauses of § 2254(d)(1) create two distinct exceptions to AEDPA's limitation on relief. *Williams*, 529 U.S. at 404-05 (the "contrary to" and "unreasonable application" clauses of (d)(1) must be given independent effect, and create two categories of cases in which habeas relief remains available).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." *Id.* at 405. This includes use of the wrong legal rule or analytical framework. "The addition, deletion, or alteration of a factor in a test established by the Supreme Court also constitutes a failure to apply controlling Supreme Court law under the 'contrary to' clause of the AEDPA." *Benn v. Lambert*, 283 F.3d 1040, 1051 n.5 (9th Cir. 2002). *See, e.g., Williams*, 529 U.S. at 391, 393 95 (Virginia Supreme Court's ineffective assistance of counsel analysis "contrary to" *Strickland*[3] because it added a third prong unauthorized by *Strickland*); *Crittenden v. Ayers*, 624 F.3d 943, 954 (9th Cir. 2010) (California Supreme Court's *Batson*[4] analysis "contrary to" federal law because it set a higher bar for a prima facie case of discrimination than established in *Batson* itself); *Frantz*, 533 F.3d at 734 35 (Arizona court's application of harmless error rule to *Faretta*[5] violation was contrary to U.S. Supreme Court holding that such error is structural). A state court also acts contrary to clearly established federal law when it reaches a different result from a Supreme Court case despite materially indistinguishable facts. *Williams*, 529 U.S. at 406, 412 13; *Ramdass v. Angelone*, 530 U.S. 156, 165 66 (2000) (plurality op'n).

A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407 08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 21 (2003). This does not mean,

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

[4] *Batson v. Kentucky*, 476 U.S. 79 (1986).

[5] *Faretta v. California*, 422 U.S. 806 (1975).

however, that the § (d)(1) exception is limited to applications of federal law that "reasonable jurists would all agree is unreasonable." *Williams*, 529 U.S. at 409 (rejecting Fourth Circuit's overly restrictive interpretation of "unreasonable application" clause). State court decisions can be objectively unreasonable when they interpret Supreme Court precedent too restrictively, when they fail to give appropriate consideration and weight to the full body of available evidence, and when they proceed on the basis of factual error. *See, e.g., Williams*, 529 U.S. at 397-98; *Wiggins*, 539 U.S. at 526 28 & 534; *Rompilla v. Beard*, 545 U.S. 374, 388 909 (2005); *Porter v. McCollum*, 558 U.S. 30, 42 (2009).

The "unreasonable application" clause permits habeas relief based on the application of a governing principle to a set of facts different from those of the case in which the principle was announced. *Lockyer*, 538 U.S. at 76. AEDPA does not require a nearly identical fact pattern before a legal rule must be applied. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Even a general standard may be applied in an unreasonable manner. *Id.* In such cases, AEDPA deference does not apply to the federal court's adjudication of the claim. *Id.* at 948.

Review under § 2254(d) is limited to the record that was before the state court. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. *Id.* In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." *Id.* at 1399.

Where the state court's adjudication is set forth in a reasoned opinion, § 2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." *Frantz*, 533 F.3d at 738 (emphasis in original). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In *Richter*, *supra*, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. *Richter*, 131 S. Ct. at 786.

/////

/////

/////

C.     "Unreasonable Determination Of The Facts"

Relief is also available under AEDPA where the state court predicated its adjudication of a claim on an unreasonable factual determination.  Section 2254(d)(2).  The statute explicitly limits this inquiry to the evidence that was before the state court.

Even factual determinations that are generally accorded heightened deference, such as credibility findings, are subject to scrutiny for objective reasonableness under § 2254(d)(2).  For example, in *Miller El v. Dretke*, 545 U.S. 231 (2005), the Supreme Court ordered habeas relief where the Texas court had based its denial of a *Batson* claim on a factual finding that the prosecutor's asserted race neutral reasons for striking African American jurors were true. *Miller El*, 545 U.S. at 240.

An unreasonable determination of facts exists where, among other circumstances, the state court made its findings according to a flawed process – for example, under an incorrect legal standard, or where necessary findings were not made at all, or where the state court failed to consider and weigh relevant evidence that was properly presented to it.  *See Taylor v. Maddox*, 366 F.3d 992, 999 1001 (9th Cir.), *cert. denied*, 543 U.S. 1038 (2004).  Moreover, if "a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in a 'unreasonable determination' of the facts" within the meaning of § 2254(d)(2). *Id.* at 1001; *accord Nunes v. Mueller*, 350 F.3d 1045, 1055 (9th Cir. 2003) (state court's factual findings must be deemed unreasonable under section 2254(d)(2) because "state court . . . refused Nunes an evidentiary hearing" and findings consequently "were made without . . . a hearing"), *cert. denied*, 543 U.S. 1038 (2004); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("state courts could not have made a proper determination" of facts because state courts "refused Killian an evidentiary hearing on the matter"), *cert. denied*, 537 U.S. 1179 (2003).

A state court factual conclusion can also be substantively unreasonable where it is not fairly supported by the evidence presented in the state proceeding.  *See, e.g., Wiggins*, 539 U.S. at 528 (state court's "clear factual error" regarding contents of social service records constitutes unreasonable determination of fact); *Green v. LaMarque*, 532 F.3d 1028 (9th Cir. 2008) (state

court's finding that the prosecutor's strike was not racially motivated was unreasonable in light of the record before that court); *Bradley v. Duncan*, 315 F.3d 1091, 1096 98 (9th Cir. 2002) (state court unreasonably found that evidence of police entrapment was insufficient to require an entrapment instruction), *cert. denied*, 540 U.S. 963 (2003).

## II.     The Relationship Of § 2254(d) To Final Merits Adjudication

To prevail in federal habeas proceedings, a petitioner must establish the applicability of one of the § 2254(d) exceptions and also must also affirmatively establish the constitutional invalidity of his custody under pre AEDPA standards. *Frantz v. Hazey*, 533 F.3d 724 (9th Cir. 2008) (en banc). There is no single prescribed order in which these two inquiries must be conducted. *Id.* at 736, 37. The AEDPA does not require the federal habeas court to adopt any one methodology. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003).

In many cases, § 2254(d) analysis and direct merits evaluation will substantially overlap. Accordingly, "[a] holding on habeas review that a state court error meets the ' 2254(d) standard will often simultaneously constitute a holding that the [substantive standard for habeas relief] is satisfied as well, so no second inquiry will be necessary." *Frantz*, 533 F.3d at 736. In such cases, relief may be granted without further proceedings. *See, e.g., Goldyn v. Hayes*, 444 F.3d 1062, 1070 71 (9th Cir. 2006) (finding § 2254(d)(1) unreasonableness in the state court's conclusion that the state had proved all elements of the crime, and granting petition); *Lewis v. Lewis*, 321 F.3d 824, 835 (9th Cir. 2003) (finding § 2254(d)(1) unreasonableness in the state court's failure to conduct a constitutionally sufficient inquiry into a defendant's jury selection challenge, and granting petition); *Williams v. Ryan*, 623 F.3d 1258 (9th Cir. 2010) (finding § 2254(d)(1) unreasonableness in the state court's refusal to consider drug addiction as a mitigating factor at capital sentencing, and granting penalty phase relief).

In other cases, a petitioner's entitlement to relief will turn on legal or factual questions beyond the scope of the § 2254(d) analysis. In such cases, the substantive claim(s) must be separately evaluated under a de novo standard. *Frantz*, 533 F.3d at 737. If the facts are in dispute or the existence of constitutional error depends on facts outside the existing record, an evidentiary /////

hearing may be necessary. *Id.* at 745; *see also Earp*, 431 F.3d 1158 (remanding for evidentiary hearing after finding § 2254(d) satisfied).

DISCUSSION

I.    <u>Bifurcated Trial</u>

Petitioner argues that the trial court erred when it declined to provide him with a bifurcated trial on prior convictions which underlay enhancements pursuant to Cal. Pen. Code § 667(a)(1). Petitioner presented this claim for the first time in a habeas petition to the California Superior Court.

A.    <u>Last Reasoned Decision</u>

The Superior Court issued the last reasoned decision:

> Petitioner correctly points out that the issue of the priors, and trial thereon, was bifurcated from the substantive crimes and use enhancements. These prior enhancements were later tried to the trial judge and found to be true. It seems to be the Petitioner's claim that a serious mistake was made because each 667(a) enhancement was not brought and tried separately, or that there wasn't another trial on the crimes underlying the enhancements. In either case, the Petitioner must be denied.
>
> . . .
>
> Petitioner failed to assert this claim on direct appeal. Petitioner does not demonstrate an exception to the general rule that a court will dismiss a habeas corpus petition if it alleges and (sic) issue that could have been, but was not, raised on direct appeal (*In re Harris* (1993) 5 Cal. 4th 813, 829; *In re Dixon* (1953) 41 Cal.2d 756, 759). Petitioner does not demonstrate an exception to the general rule that a court will not consider claims on habeas corpus that were raised and rejected on direct appeal (*Harris*, 5 Cal. 4th at 829). The rule was stated clearly in *In re Chambers* (1940) 16 Cal.2d 701 at p. 705: "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him." Any error in the manner in which the issue of the 667(a) prior convictions as enhancements trial proceeded would have been an issue for the appeal. Having failed to bring the issue on appeal, the issue is waived and is not a proper subject for Habeas Relief.
>
> Finally, it seems that the Petitioner has a fundamental misunderstanding regarding the requirement under 667(a) that in order to actually impose the five (5) years, that prior must have been "brought and tried separately." That phrase refers to the requirement that individual serious of violent felonies (*sic*) that were part of a single prior case, regardless of whether they were distinct or part of a single course of criminal conduct, can only result in one five (5)

9

> year term enhancing the sentence.  If there were two distinct cases charged and prosecuted to completion, this would constitute two separate five (5) year terms.  The case or cases underlying the five (5) years actually imposed does not require that the underlying charge actually was tried by a jury.  It is enough that the defendant plead to the charge and was sentenced.
>
> In the instant case, only one five (5) year enhancement was imposed from Shasta County case 00F3757 despite the fact he was convicted of nine (9) counts of serious felonies.  The second five (5) year term under 667(a) was from a separately "brought and tried" serious felony in Lassen County.  There is no error.

ECF No. 18-9 at 1-2.  Petitioner raised this claim again in subsequent habeas petitions to the California Court of Appeal and California Supreme Court.  ECF Nos. 19-5 at 3; ECF No. 19-8 at 3.  Both of these petitions were summarily denied.  ECF No. 18-3; ECF No. 18-6.

### B. Relevant Federal Law

#### 1. Bifurcation

The Supreme Court has never held that a criminal defendant has a constitutional right to a bifurcated trial.  In *Spencer v. Texas*, it held that "[t]wo-part jury trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure."  385 U.S. 554, 568 (1967).  In *Apprendi v. New Jersey*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  The Supreme Court justified its decision to so distinguish recidivism by noting that: (1) "recidivism is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence;" (2) "recidivism does not relate to the commission of the [charged] offense[,];" and (3) prior convictions stem from proceedings that include their own procedural protections.  *Id.* at 488.

#### 2. Procedural Bar

A federal court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and

/////

/////

10

1  adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also*

2  *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).  This principle applies to claims that have been

3  procedurally defaulted in state court.  *Id.* at 731.

4             C.      Analysis

5        There are two bases on which to reject this claim.  As noted above, the state superior court

6  held that it was procedurally barred.  A state procedural bar is "independent" if "the state court

7  explicitly invokes a state procedural bar rule as a separate basis for its decision."  *McKenna v.*

8  *McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995).  A state procedural bar is "adequate" if it is "clear,

9  consistently applied, and well-established at the time of the petitioner's purported default."

10 *Calderon v. United States Dist. Court*, 96 F.3d 1126, 1129 (9th Cir. 1996).  Here, the superior

11 court explicitly invoked petitioner's failure to raise this claim on direct appeal and cited state

12 authorities requiring as much.  Thus, the procedural bar was independent.  It was also adequate

13 insofar as it relied on the so-called "*Dixon* bar."  *See Johnson v. Lee*, 136 S. Ct. 1802, 1805

14 (2016) (holding that *Dixon* bar is adequate insofar as it is firmly established and regularly

15 followed).

16       And, even if this claim were not procedurally barred, it would fail on its merits.  As noted

17 above, there is no clearly established federal law entitling a defendant to a separate trial(s) on his

18 prior convictions.  "[W]hen a Supreme Court decision does not 'squarely address[] the issue in

19 th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context to the extent

20 required by the Supreme Court . . . it cannot be said, under AEDPA, there is 'clearly established'

21 Supreme Court precedent addressing the issue before us, and so we must defer to the state court's

22 decision."  *Moses v. Payne*, 555 F.3d 742, 754 (9th Cir. 2009).  Here, the superior court, in

23 addition to raising the procedural bar, also held that state law did not require that each prior

24 conviction be brought and tried separately.  This court, in the absence of clearly established

25 federal law to the contrary, must defer to that decision.

26 /////

27 /////

28 /////

1    II.    <u>Right to Testify</u>

2           Petitioner argues that he was denied his right to testify when he told his trial that he

3    desired to do so and counsel failed to either inform the trial court of that desire or call petitioner

4    as a witness.

5                  A.    <u>Last Reasoned Decision</u>

6           The court of appeals issued the last reasoned decision when it denied this claim on direct

7    appeal:

8                  Defendant argues he was denied his constitutional right to testify
                   because he told his trial counsel Michael C. Borges, during the
9                  People's case-in-chief, that he wanted to testify but Borges failed to
                   inform the trial court of his wish and to call him as a witness.
10
                   A criminal defendant has a constitutional right to testify in his own
11                 defense. (*Rock v. Arkansas* (1987) 483 U.S. 44, 51-53 [107 S. Ct.
                   2704, 97 L.Ed.2d 37, 46-47].) A defendant who wants to testify may
12                 even do so over the objection of his attorney. (*People v. Robles*
                   (1970) 2 Cal.3d 205, 214-215, 85 Cal. Rptr. 166, 466 P.2d 710.)
13                 However, a defendant must timely and adequately assert his right to
                   testify. (*People v. Guillen* (1974) 37 Cal.App.3d 976, 984, 113 Cal.
14                 Rptr. 43 (*Guillen*).) When a defendant does not timely and
                   adequately assert his right to testify, "'a trial judge may safely
15                 assume that a defendant who is ably represented and who does not
                   testify is merely exercising his Fifth Amendment privilege against
16                 self-incrimination and is abiding by his counsel's trial strategy.'"
                   (*People v. Hayes* (1991) 229 Cal.App.3d 1226, 1231, 280 Cal. Rptr.
17                 578 (Hayes); *see People v. Bradford* (1997) 14 Cal.4th 1005, 1053,
                   60 Cal. Rptr. 2d 225, 929 P.2d 544.)
18
                   Defendant had numerous opportunities to inform the trial judge he
19                 wanted to testify before the jury returned its verdict, and defendant
                   failed to do so. After defendant presenting evidence in his
20                 case-in-chief, the trial judge spoke with defendant, outside the
                   presence of the jury, about testifying. The trial judge told defendant,
21                 "I want you to discuss this with your attorney as you see fit. You
                   have an absolute right to testify in your own defense, even if your
22                 attorney advises you not to. And if you want to testify, nobody can
                   stop you. [¶] But if you do decide to testify, understand that the
23                 Prosecution can thoroughly cross-examine you on every issue and
                   piece of information on which you do testify. [¶] You also have an
24                 absolute right to remain silent under the Fifth Amendment. It is your
                   privilege against self-incrimination. And if you do decide you want
25                 to remain silent, nobody — not me, not law enforcement, not the DA,
                   not your lawyer — can make you testify. It is going to purely
26                 voluntary [sic] of your own choice. [¶] You should listen to your
                   lawyer's advice about this issue. That's one of the reasons you have
27                 him. But the ultimate decision is yours. [¶] Do you understand that?"
                   Defendant replied in the affirmative. The trial judge continued, "if
28                 you decide not to testify and you and your lawyer want me to, I will

                                            12

tell the jurors that they cannot consider your silence as evidence against you. Understood?" Defendant again replied in the affirmative. The prosecution had already played recordings of defendant's police interviews at that point in the trial.[6] Defendant did not tell the trial judge he wanted to testify.

Thereafter, in the context of discussing which of defendant's prior crimes would be admitted for purposes of impeachment should defendant testify, the trial judge said, outside the presence of the jury, he had already discussed defendant's right to testify with defendant. The trial judge asked whether defendant felt he had learned enough from the judge about the issue, and defendant replied "yes." Defendant did not say he wanted to testify. He rested his case later that afternoon without any indication in the record that he wanted to take the stand.

Also prior to the receipt of the verdict, defendant was present at the jury instruction conference when the trial court discussed giving the CALCRIM No. 355 instruction relating to a defendant's right not to testify. The CALCRIM No. 355 instruction states a defendant has an absolute right not to testify and the jury must not consider, for any reason, the fact that the defendant did not testify. Borges agreed the trial court should give the CALCRIM No. 355 instruction. Again, defendant did not say he wanted to testify.

Defendant or his trial counsel raised the issue of defendant's desire to testify for the first time about four and a half months after the jury returned its verdict. Defendant raised an ineffective assistance of counsel claim after the jury returned its verdict and the enhancement allegations against defendant were found to be true. Defendant asserted that, when the prosecutor played a recording of defendant's police interview at the trial, defendant told Borges he "wanted to testify for sure," but Borges failed to call defendant to the stand. Borges told the trial court, during an in camera hearing, that defendant mentioned a "newly discovered desire to testify" when the prosecution played a recording of defendant's police interview to the jury. However, Borges said he did not specifically recall that defendant wanted to testify, although it was possible he missed defendant's request and closed the evidence too quickly. The trial court relieved Borges and appointed defendant new trial counsel without making a finding that Borges had rendered ineffective assistance of counsel. Defendant subsequently moved for a new trial on the ground that he was denied his constitutional right to testify. Defendant called Borges as a witness in connection with his new trial motion. Borges testified that defendant said, "'I think I might want to testify'" or "'I think I want to testify'" when the prosecution was playing a recording to the jury. According to Borges, defendant did not affirmatively state he wanted to testify. Defendant also testified

_____

[6] As defendant acknowledges on appeal, the prosecutor played recordings of defendant's statements to police during the People's case-in-chief and before defendant presented his case. Defendant and Borges incorrectly recalled, in the trial court, that the prosecutor played the recordings during the People's rebuttal. [footnote number three in original text].

13

in support of his new trial motion. He maintained he told Borges he wanted to testify.

The trial court had an opportunity to observe Borges and defendant and credited Borges's testimony. The trial court found defendant made an equivocal statement to Borges that he may want to testify. The trial court found defendant did not apprise the trial judge that he wanted to testify before the jury rendered its verdict.

A defendant "'may not await the outcome of the trial and then seek reversal based on his claim that despite expressing to counsel his desire to testify, he was deprived of that opportunity.'" (*People v. Alcala* (1992) 4 Cal.4th 742, 805-806, 15 Cal. Rptr. 2d 432, 842 P.2d 1192 (*Alcala*); *Hayes*, *supra*, 229 Cal.App.3d at pp. 1231-1232; *Guillen*, *supra*, 37 Cal.App.3d at pp. 984-985.) We reject defendant's claim because he failed to timely inform the trial court that he wanted to testify.

Even if we assume defendant was denied his constitutional right to testify, there is no prejudice in this case. The denial of the right to testify is subject to harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18 [87 S. Ct. 824, 17 L.Ed.2d 705] (*Chapman*). (*People v. Allen* (2008) 44 Cal.4th 843, 848, 871-872, 80 Cal. Rptr. 3d 183, 187 P.3d 1018; *People v. Johnson* (1998) 62 Cal.App.4th 608, 634-636, 72 Cal. Rptr. 2d 805.) Under *Chapman*, the denial of a defendant's right to testify is harmless error if it can be shown beyond a reasonable doubt that the error did not contribute to the guilty verdict. (*Johnson*, *supra*, 62 Cal.App.4th at p. 635.) The exclusion of a defendant's testimony is harmless if the facts to which the defendant offered to testify would not have affected the verdict. (*Allen*, *supra*, 44 Cal.4th at p. 872.)

Defendant testified, in connection with his motion for a new trial, that if he had taken the stand at trial he would have explained the "reasonings" for the actions the surveillance team observed on September 15. In particular, defendant wanted to tell the jury why he was in the bank parking lot at the time of the robbery. Defendant said he would have testified he was at the bank parking lot to pick up Josh because Josh asked defendant to pick up Josh at their "meeting spot" where defendant picked up Josh every day. But those facts were actually presented to the jury.

The jury watched a recording of defendant's September 15 police interview. During that interview, defendant explained that Josh asked defendant to pick him up at the Redding Inn. Defendant said he stopped at the bank parking lot, which was near Redding Inn, to look for Josh and because defendant needed to urinate. Defendant said he had picked up Josh at the Redding Inn many times. At his second police interview, defendant again told police that Josh called defendant and asked defendant to pick him up at the Redding Inn. Defendant said he drove to the Redding Inn, did not see anyone there, stopped at the bank to urinate, circled around, left to go home, and was then stopped by police.

> In sum, defendant explained to police why he was at the bank parking lot, and that portion of his police interview was played to the jury. Any error in defendant not taking the stand is harmless because the facts to which defendant said he would have testified were actually presented to the jury.

ECF No. 18-1 at 3-5. Petitioner never presented this claim to the California Supreme Court – either on direct appeal or collateral review.

### B.     Relevant Federal Law

A criminal defendant has a fundamental constitutional right to testify. *Rock v. Arkansas*, 483 U.S. 44, 51-54 (1987). That right is "not without limitation", however, and it "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Id.* at 55 (internal quotation marks and citations omitted). Additionally, this right may be waived by the defendant. *See United States v. Mezzanatto*, 513 U.S. 196, 201 (1995). Such a waiver is valid so long as it is knowing, voluntary, and intelligent. *United States v. Ruiz*, 536 U.S. 622, 629 (2002).

### C.     Analysis

As an initial matter, this claim is unexhausted insofar as petitioner failed to present it to the California Supreme Court. It clearly fails on its merits, however, and thus the court will dispose of it on that basis. 28 U.S.C. § 2254(b)(2). Here, as the court of appeal pointed out, petitioner was clearly and thoroughly informed of his right to testify. The following exchange occurred before the trial court:

> **Court**:  . . . [w]hile we're on this subject, there is always the possibility that you, Mr. Vercher, could testify in your own defense.
>
> **Petitioner**: Yes, sir.
>
> **Court**: And I don't want you to comment on this. I want you just to be an information receiver right now. And I want you to discuss this with your attorney as you see fit. You have an absolute right to testify in your own defense, even if your attorney advises you not to. And if you want to testify, nobody can stop you.
>
> But if you do decide to testify, understand that the Prosecution can thoroughly cross-examine you on every issue and piece of information on which you do testify.
>
> . . .

> You should listen to your lawyer's advice about this issue. That's one of the reasons you have him. But the ultimate decision is yours.
>
> Do you understand that?
>
> **Petitioner**: Yes, sir.

ECF No. 19-23 at 478-79 (RT Vol. 2). Despite being so advised, there is no indication that petitioner ever made an unequivocal assertion - to the trial court and prior to the jury's verdict - that he wished to testify.

> [I]f the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer. . . . Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so.

*United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993). At the very least, as respondent points out, petitioner has failed to show that no fair-minded jurist could agree with the court of appeal's determination that his failure to timely apprise the trial court of his desire to testify precluded relief. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision.").

III.    Admission of Prior Conduct Evidence

Petitioner argues that the trial court erred when it admitted prior conduct evidence. Specifically, he contends that: (1) the trial court erred when it ruled that uncharged conduct evidence was admissible to explain why law enforcement was surveilling him; (2) the trial court erred when it ruled that evidence of a separate marijuana collective (Northern Patient's Group) robbery was admissible and that this robbery constituted a prior offense; and (3) the trial court erred when it admitted evidence of his prior convictions.

A.    Last Reasoned Decision

The court of appeals, on direct appeal, issued a reasoned decision with respect to the first of these evidentiary claims – that the trial court should not have admitted uncharged conduct evidence for the purpose of explaining why he was under surveillance. It held:

16

Defendant also contends the trial court erred in admitting uncharged conduct evidence for the purpose of explaining why defendant was under surveillance.

The People sought to admit evidence that (1) defendant had 10 prior robbery or attempted robbery convictions; (2) an employee of a medical marijuana collective saw a white Range Rover driven by a black male cruise slowly past her collective, as if "casing" it, the day before the Trusted Friends robbery; and (3) defendant was involved in the Northern Patient's Group robbery. The People sought to admit the above uncharged conduct evidence for two purposes. The People wanted to show, pursuant to Evidence Code section 1101, subdivision (b), defendant's knowledge that Josh and E. were committing a robbery at Trusted Friends; defendant intended to assist in that robbery by acting as a lookout; there was a common plan in that the Trusted Friends robbery was similar to the robberies defendant previously committed; and the absence of mistake. In addition, the People sought to present the uncharged conduct evidence for the nonhearsay purpose of explaining why the police were following defendant on September 15.

The trial court admitted the uncharged conduct evidence under Evidence Code section 1101, subdivision (b). Defendant does not challenge that ruling. However, defendant challenges the trial court's ruling that the uncharged conduct evidence is admissible to explain why the police were surveilling defendant.

Only relevant evidence is admissible. (Evid. Code, § 350.) "Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.) The reasonableness of the determination by law enforcement officials to follow defendant is irrelevant to any disputed issue in the trial. (*People v. Lucero* (1998) 64 Cal.App.4th 1107, 1109-1110, 75 Cal. Rptr. 2d 806 [it is error to admit evidence that a witness told the testifying officer the robber left a particular shoeprint for the purpose of explaining why the officer lifted that shoe print where the good faith or reasonableness of the officer's conduct had no tendency in reason to prove any disputed issue of fact in the action].) The prosecutor argued it was important for the jury to know why the police were watching defendant because, without the uncharged conduct evidence, the jury may believe defendant was a "law abiding citizen who has become inexplicably the focus of all this police attention" and the jury might "speculate about race and maybe the Redding police are focusing on him because he's African-America[n]." But defendant did not claim the police were acting in bad faith in following defendant. Accordingly, it was error for the trial court to admit the uncharged conduct evidence for the purpose of explaining why the police had defendant under surveillance.

Defendant claims the admission of evidence about why police suspected he was involved in the medical marijuana collective robberies — i.e., his prior robbery convictions and evidence tying him to the Northern Patients Group robbery — rendered his trial

17

fundamentally unfair; therefore, the *Chapman*, *supra*, 386 U.S. 18 [17 L.Ed.2d 705] standard of prejudice applies. We disagree.

Criminal propensity is not the only inference to be drawn from the uncharged conduct evidence. As defendant acknowledges, the uncharged conduct evidence was also admitted, pursuant to Evidence Code section 1101, subdivision (b), to show intent, motive, common plan or scheme, and absence of mistake or accident. Defendant does not challenge the trial court's ruling that the uncharged conduct evidence is relevant for those purposes.

The trial court repeatedly instructed the jury it may not use uncharged crime evidence to conclude that defendant was more likely to have committed the charged crimes because he committed the uncharged crimes. The trial court instructed that other crimes evidence admitted for the purpose of showing intent, motive, common plan or scheme, and absence of mistake or accident was not sufficient, by itself, to prove defendant's guilt of the charged crimes. We presume the jury followed the trial court's instructions on the limited use of uncharged conduct evidence. (*People v. Lindberg* (2008) 45 Cal.4th 1, 26, 82 Cal. Rptr. 3d 323, 190 P.3d 664.)

Moreover, the trial court allowed defendant to present evidence about other marijuana collective robberies and burglaries in Redding in the summer of 2011 in order to argue that third parties, and not defendant, committed the Trusted Friends robbery. Under these circumstances, the admission of evidence about the reasons for the surveillance of defendant did not render defendant's trial fundamentally unfair.

"[G]enerally, violations of state evidentiary rules do not rise to the level of federal constitutional error." (*People v. Benavides* (2005) 35 Cal.4th 69, 91, 24 Cal. Rptr. 3d 507, 105 P.3d 1099.) We review error in admitting irrelevant evidence under the *People v. Watson* (1956) 46 Cal.2d 818, 299 P.2d 243 standard of prejudice. We must determine whether it is reasonably probable, in light of the other evidence, that the jury would have reached a result more favorable to the defendant had the challenged evidence been excluded. (*Alcala*, *supra*, 4 Cal.4th at p. 797.)

Even if it was error to admit the uncharged conduct evidence, it is not reasonably probable defendant would have obtained a more favorable result. Defendant procured the car which C., Josh, and E. used in the Trusted Friends robbery. Phone records indicate defendant, C., and Josh coordinated their movements near Trusted Friends before the robbery, and defendant spoke with Josh on his cell phone during the robbery. Defendant was at the Union Bank parking lot, which was near Trusted Friends. E. saw Josh talking on a cell phone before the robbery. E. heard Josh say, "we're here" into his cell phone. Although he later recanted, E. told police he heard Josh say "is it clear? Are we, are we good to go?" into his cell phone. Witnesses inside Trusted Friends saw one of the robbers held a cell phone to his ear during the robbery. Defendant left the bank parking lot about 30 seconds before Officer Jacoby received a report that Trusted Friends had been robbed.

18

C. told police defendant recruited C. to drop off Vanessa Pride's car for Josh to use in a robbery. C. recanted his police statement at the trial. But, according to C.'s aunt, C. confided that he and defendant were involved in the Trusted Friends robbery. The jury was entitled to discredit C.'s trial testimony and believe his statement to police implicating defendant.

A reasonable trier of fact could find defendant procured the getaway vehicle for the Trusted Friends robbery and acted as a lookout for C., Josh and E. A rational fact finder could also conclude defendant lied to police, evincing a guilty conscience. Defendant was untruthful to police, during his first interview, about what he was doing just prior to stopping at the bank parking lot. Defendant told police he drove around Martin Luther King park looking for C. and Josh. However, the officers who were following defendant did not see defendant drive near the park.

Considering the evidence of defendant's guilt, the trial court's instructions with regard to the limited use of uncharged conduct evidence, and the admission of third party culpability evidence, we conclude the error in admitting uncharged conduct evidence for the purpose of explaining why defendant was under surveillance does not require reversal of the judgment.

ECF No. 18-1 at 5-6.

The second and third prior conduct claims –related to the Northern Patient Group Robbery and general evidence of prior convictions – were first presented in a petition for writ of habeas corpus filed in the California Superior Court. ECF No. 19-12 at 3, 11. The superior court denied these claims in a reasoned decision, holding:

In the instant petition, Vercher alleges error by the trial court by admitting prior acts evidence under Evidence Code section 1101(b); evidence of a prior uncharged robbery. This issue is appealable error. The only explanation Petitioner provides for the failure to address the issue on appeal is "I.A.C." (Incompetence of his appeals attorney). He gives no evidence of that allegation.

Petitioner failed to assert this claim on direct appeal. Petitioner does not demonstrate an exception to the general rule that a court will dismiss a habeas corpus petition if it alleges an issue that could have been, but was not raised on direct appeal (In re Harris (1993) 5 Cal. 4th 813, 829; In re Dixon (1953) 41 Cal.2d 756, 759). Petitioner does not demonstrate an exception to the general rule that a court will not consider claims on habeas corpus that were raised and rejected on direct appeal. (*Harris*, 5 Cal.4th at 829.) The rule was stated clearly in *In re Chambers* (1940) 16 Cal.2d 701 at p. 705, "In this state a defendant is not permitted to try out his contentions piecemeal by successive proceedings attacking the validity of the judgment against him."

Petitioner failed to raise this claim in his prior habeas corpus petition, 17HB5804. A habeas petitioner generally must raise all of his habeas claims in one timely filed habeas petition (*In re Clark* (1993) 5 Cal. 4th 750, 797). Petitioner does not demonstrate that a fundamental miscarriage of justice would result from the failure to entertain the claims (See *Clark* at 797-798).

This same allegation, although far more general, was been (sic) made in the prior writ. That petition was denied. Petitioner's attempts to re-litigate the same claim constitutes an abuse of the writ (*In re Clark* (1993) 5 Cal. 4th 750, 797). "It has long been the rule that absent a change in applicable law or facts, the court will not consider newly presented grounds for relief which were known to the petitioner at the time of a prior collateral attack on the judgment." (*In re Drew* (1922) 188 Cal. 717). Petitioner does not demonstrate that a fundamental miscarriage of justice would result from the failure to entertain the claims (See *Clark* at 797-798).

ECF No. 18-10 at 1-2. The claims were then presented to both the California Court of Appeal and the California Supreme Court on collateral review. ECF No. 19-6 & ECF No. 19-9. The court of appeal issued a summary denial. ECF No. 18-7. The Supreme Court denied the submitted petition with a citation to *In re Clark*, 5 Cal. 4th 750, 767-769 and a statement that "courts will not entertain habeas corpus claims that are successive." ECF No. 18-4.

B.    Relevant Federal Law

A state court's evidentiary errors, absent some showing that the defendant's constitutional rights were violated as a consequence of those errors, do not give rise to cognizable federal habeas claims. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). The Ninth Circuit has recognized that the Supreme Court has never ruled that the admission of irrelevant or overly prejudicial evidence gives rise a violation of a defendant's due process rights. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process. Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, . . . it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

/////

1      /////

2                      C.      Analysis

3              As an initial matter, petitioner's claims related to the Northern Patient Group Robbery and

4      general evidence of prior convictions are procedurally barred.  Both were ultimately denied by the

5      California Supreme Court with a citation to *Clark* and the admonition that successive habeas

6      claims would not be entertained.  In *Clark*, the California Supreme Court held that:

7                      It has long been the rule that absent a change in the applicable law or
                       the facts, the court will not consider repeated applications for habeas
8                      corpus presenting claims previously rejected. The court has also
                       refused to consider newly presented grounds for relief which were
9                      known to the petitioner at the time of a prior collateral attack on the
                       judgment.
10

11     5 Cal. 4th at 767-68.  Numerous courts in this circuit have determined that the California rule

12     against successive petitions announced by *Clark* is an adequate and independent state procedural

13     ground.  *See*, *e.g.*, *Acedo v. Fisher*, No. 17CV2346-GPC(JMA), 2018 U.S. Dist. LEXIS 158345,

14     * 13-14 (S.D. Cal. Sept. 17, 2018); *Briggs v. California*, No. 15-cv-05809-EMC, 2017 U.S. Dist.

15     LEXIS 69281 *13-19 (N.D. Cal. May 5, 2017).  The court could reach past the procedural bar

16     and to the merits of these claims only if petitioner could demonstrate that the failure to do so

17     would result in a "miscarriage of justice."  *Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992).  In

18     the federal habeas context, a "miscarriage of justice" is limited to the small class of habeas

19     petitioners who can demonstrate that "a constitutional violation has probably resulted in the

20     conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

21     Petitioner has failed to make that showing in the instant case.

22             Thus, the court will only reach the merits of petitioner's claim that the trial court erred

23     when it admitted uncharged conduct evidence for the purpose of explaining why he was under

24     surveillance.  As noted above, the Supreme Court has never held that the admission of irrelevant

25     or overly prejudicial evidence violates due process.  In *Estelle*, the court explicitly noted that

26     "[b]ecause we need not reach the issue, we express no opinion on whether a state law would

27     violate the Due Process Case Clause if it permitted the use of 'prior crimes' evidence to show

28     propensity to commit a charged crime."  502 U.S. at 75 n.5.  It has not settled the question in the

                                                  21

intervening years and it remains an open issue. As respondent correctly points out, in the absence of clearly established federal law, the California Court of Appeal's rejection of this claim cannot be said to be objectively unreasonable within the meaning of § 2254(d)(1). *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law.") (internal quotation marks and citations omitted).

IV.    Exclusion of Impeachment Evidence

Next, petitioner claims that the trial court erred when it excluded impeachment evidence related to Officer Jacoby. This claim was presented on direct appeal.

A.    Last Reasoned Decision

The court of appeal rejected this claim in a reasoned decision:

> Defendant next argues the trial court erred in excluding impeachment evidence relating to Officer Jacoby.
>
> The People moved in limine to exclude evidence that Officer Jacoby had a six-year-old conviction for misdemeanor DUI, arguing that misdemeanor DUI is not a crime of moral turpitude. Defendant responded it was Officer Jacoby's attempt to bribe a public official during the DUI investigation which was significant, not the fact of Officer Jacoby's misdemeanor conviction. Defendant's trial counsel argued the attempted bribery incident was relevant to Officer Jacoby's credibility "and whether or not that failed attempt in his continued employment with the Redding Police Department has an affect [sic] on his motives insofar as what he might testify to and how he might conduct an investigation, the kinds of things he might do or not do, whether he might exaggerate in order to conform his testimony to what might be expect [sic] by his peers, his superiors or the People insofar as they are represented by the District Attorney's Office here."
>
> Defendant offered to prove the following: Millville Fire Captain Scott Tassen encountered Officer Jacoby near a disabled vehicle on Highway 44 on March 24, 2006. Captain Tassen asked Officer Jacoby whether he was the only person who was in the disabled vehicle. Officer Jacoby said "no" but later changed his answer. Officer Jacoby asked Captain Tassen to tell dispatch the disabled vehicle was empty and to leave. Captain Tassen declined. Officer Jacoby said, "Well, I've done lots of favors for the Millville Fire Department in the past. Why can't you do me a favor here?" Captain Tassen refused to leave. He waited for the arrival of the California Highway Patrol who conducted a DUI investigation.
>
> The prosecutor argued Officer Jacoby's alleged misconduct did not constitute attempted bribery. The prosecutor further urged the

proffered evidence was not probative of Officer Jacoby's credibility and its admission would require an undue consumption of time.

The trial court granted the People's in limine motion, concluding the alleged conduct was not an attempt to bribe a public official. The trial court said the alleged conduct was not much different than "a pretty girl trying to convince a male police officer by smiling at him and saying, 'Hey, can't you give a girl a break?'" The trial court also noted the alleged misconduct occurred six years prior. The trial court found the proffered evidence was not significantly probative and had a tendency to misdirect the jury.

Defendant contends the trial court erred in concluding Officer Jacoby's alleged misconduct does not constitute bribery. No error occurred in this respect. A "bribe" is "anything of value or advantage, present or prospective, or any promise or undertaking to give any, asked, given, or accepted, with a corrupt intent to influence, unlawfully, the person to whom it is given, in his or her action, vote, or opinion, in any public or official capacity." (§ 7, subd. (6); *People v. Gaio* (2000) 81 Cal.App.4th 919, 928-929, 97 Cal. Rptr. 2d 392 [bribery is the giving or receipt of something of value with the intent of influencing the recipient's official vote, action, or opinion].) Defendant's offer of proof does not show that Officer Jacoby gave or offered to give Captain Tassen something of value with the intent of influencing Captain Tassen's official action.

Defendant says even if Officer Jacoby's conduct does not amount to bribery, it is an act of moral turpitude with which Officer Jacoby could be impeached. We agree a jury could reasonably infer from defendant's offer of proof that Officer Jacoby was dishonest and, thus, not worthy of credit. (*People v. Wheeler* (1992) 4 Cal.4th 284, 296, fn. 6, 14 Cal. Rptr. 2d 418, 841 P.2d 938 (*Wheeler*), superseded by statute on another point as noted in *People v. Duran* (2002) 97 Cal.App.4th 1448, 1459-1461, 119 Cal. Rptr. 2d 272 [impeaching misconduct need not constitute a crime]; *People v. Mickle* (1991) 54 Cal.3d 140, 168, 284 Cal. Rptr. 511, 814 P.2d 290; *People v. Alcalde* (1944) 24 Cal.2d 177, 184-185, 148 P.2d 627.) Nonetheless, we conclude defendant has not established error.

Even if Officer Jacoby's alleged misconduct involves moral turpitude, admission of such evidence is subject to the trial court's discretion, under Evidence Code section 352, to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, confusing the issues, or misleading the jury. (Evid. Code, § 352; *People v. Quartermain* (1997) 16 Cal.4th 600, 623, 66 Cal. Rptr. 2d 609, 941 P.2d 788 ["notwithstanding the confrontation clause, a trial court may restrict cross-examination of an adverse witness on the grounds stated in Evidence Code section 352"]; *Wheeler*, supra, 4 Cal.4th at pp. 295-296.) Here, the trial court found the alleged misconduct by Officer Jacoby was remote, had a tendency to misdirect the jurors, and was not significantly probative. There is no evidence in the record that, unlike the alleged 2006 DUI incident, Officer Jacoby had a motive to lie in this case. Defendant asserts the trial court abused its

discretion under Evidence Code section 352. But he fails to provide any analysis supporting the claim and, thus, forfeits it. (*People v. Whalen* (2013) 56 Cal.4th 1, 72, fn. 28, 152 Cal. Rptr. 3d 673, 294 P.3d 915; *People v. Earp* (1999) 20 Cal.4th 826, 881, 85 Cal. Rptr. 2d 857, 978 P.2d 15; *People v. Freeman* (1994) 8 Cal.4th 450, 482, fn. 2, 34 Cal. Rptr. 2d 558, 882 P.2d 249.) Defendant thereby fails to show the trial court erred in excluding evidence of the alleged misconduct by Officer Jacoby.

We would conclude any error is harmless beyond a reasonable doubt even if we view the exclusion of the proffered evidence as constitutional error, as defendant urges. The exclusion of cross-examination designed to attack the credibility of a witness violates a defendant's constitutional right to confront witnesses if the prohibited cross-examination would have produced a significantly different impression of the witness's credibility. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 680 [106 S. Ct. 1431, 89 L.Ed.2d 674, 684].) Improper denial of cross-examination requires reversal unless the error was harmless beyond a reasonable doubt. (*Id.* at p. 684 [89 L.Ed.2d at p. 686].) Whether the constitutionally improper exclusion of impeachment evidence is harmless depends on factors including the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case. (*Ibid.*)

While Officer Jacoby's testimony is important to the prosecution's case, other evidence corroborates his testimony and establishes defendant's guilt. (*People v. Brown* (2003) 31 Cal.4th 518, 546, 3 Cal. Rptr. 3d 145, 73 P.3d 1137 [finding any Confrontation Clause error harmless beyond a reasonable doubt where witness's testimony was largely consistent with that of other witnesses and other evidence supported the defendant's guilt].) Officer Jacoby's testimony established defendant stopped at the bank parking lot, he appeared to talk on a cell phone, and he looked in the direction of Trusted Friends. Defendant admitted to police he was at the bank parking lot near Trusted Friends during the robbery. A recording of radio communication between members of the surveillance team, which was played to the jury, also corroborates Officer Jacoby's testimony that defendant stopped at the bank parking lot and the Trusted Friends robbery was reported after defendant left the bank parking lot. People's exhibit 30 shows the front of Trusted Friends was visible from the bank. While no other witness testified about where defendant looked when he was at the bank parking lot, defendant admitted he was talking to Josh during the robbery. Cell phone records confirm the communications between defendant and Josh immediately before and during the commission of the Trusted Friends robbery, when police saw defendant at the bank parking lot and when E. and the victims saw Josh talking on a cell phone. E. testified he waited for Josh, who was speaking on a cell phone, to give E. the "go-ahead" for the robbery. In addition, the testimonies of Officer John Thulin, Vanessa Pride, C., and E. establish defendant obtained the car used in the Trusted Friends robbery. And C. implicated defendant in the Trusted Friends robbery in one of his

1    statements to police and in a statement to his aunt.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Further, defendant discredited Officer Jacoby's testimony in other ways. Officer Jacoby admitted, during cross-examination, he could not remember exactly how many times the Charger left the apartment complex and he did not observe defendant the entire time defendant was at the bank parking lot. Defendant's trial counsel argued to the jury that Officer Jacoby and the police concluded defendant was involved in the marijuana collective robberies based on his prior convictions, and the police conducted an inadequate investigation. Defendant's trial counsel criticized Officer Jacoby for not wearing a watch, not paying attention to what defendant was doing, and not documenting his observations. He challenged Officer Jacoby's testimony that defendant was parked at the bank when the Trusted Friends robbery occurred. He also attacked the prosecution's theory that defendant acted as a look-out, arguing defendant could not see a particular street and the back of Trusted Friends from his alleged position at the bank parking lot.

We conclude there was no prejudicial error.

ECF No. 18-1 at 6 - 8. This claim was not, however, presented to the California Supreme Court on either direct appeal or collateral review.

### B. Relevant Federal Law

The Supreme Court has held that "state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *United States v. Scheffer*, 523 U.S. 303, 308 (1998); *see also Montana v. Egelhoff*, 518 U.S. 37, 53 (1996) ("[T]he introduction of relevant evidence can be limited by the State for a 'valid' reason."). In *Nevada v. Jackson*, the Supreme Court noted that "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." 569 U.S. 505, 509 (2013). The exclusion of evidence violates a defendant's right to present a complete defense only where the exclusion is arbitrary and the exclusion "infringed upon a weighty interest of the accused." *Scheffer*, 523 U.S. at 308; *see also Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987) ("Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected.").

### C. Analysis

As an initial matter, this claim is unexhausted. Nevertheless, because it clearly fails on its merits, the court will dispose of it on that basis. The state court of appeal found that the trial court's decision to exclude this evidence was not erroneous under state law. This court is bound

26

by that holding. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). And petitioner cannot show that the exclusion was arbitrary or that it infringed on a weighty interest. The trial court determined:

> And the argument or concept that after six years after the officer has been convicted, that he would still be tempted to lie or comport his behavior or statements to be consistent with other officers to help get over the hurdle of his DUI just don't make sense to me. I think it's not significantly probative. *It's going to have a tendency to misread, misdirect jurors.* And so I am going to preclude it and grant the People's motion to preclude.

ECF No. 19-22 at 35 (emphasis added). And, as the state court of appeal reasonably found, Jacoby's testimony was not, standing alone, critical to a determination of petitioner's guilt. The existence of other corroborating evidence cuts against a finding that the exclusion of the impeachment evidence deprived petitioner of an opportunity to present a complete defense. Finally, the court notes that petitioner cannot reasonably claim that the exclusion of this evidence violated his Sixth Amendment confrontation rights. The Supreme Court has previously held that:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed earlier this Term, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). As noted *supra*, the trial court determined that introduction of the impeachment evidence had, at best, only marginal relevance and was likely to misdirect the jury.

Thus, this claim fails.

IV.     Ineffective Assistance of Counsel

Petitioner argues that his appellate attorney rendered ineffective assistance by failing to raise his claims one, three, and six – namely those regarding: bifurcation, admission of prior convictions under section 1101(b), and admission of evidence related to the Northern Patient

27

Group robbery on direct appeal. He also claims appellate counsel erred in failing to 'federalize' claims two and four – namely those regarding: denial of his right to testify and the exclusion of impeachment evidence.

### A. Last Reasoned Decision

Petitioner presented his claim that appellate counsel was ineffective for failing to "federalize" his claims (regarding denial of right to testify and exclusion of impeachment evidence) to the California Supreme Court in a habeas petition filed on February 22, 2018. ECF No. 19-5 at 16, 22. This habeas petition also argued that appellate counsel failed to raise the bifurcation issue on direct appeal. *Id.* at 24. The petition received a summary denial on May 9, 2018. ECF No. 18-3. These ineffective assistance claims do not appear to have received a reasoned decision at any lower level.

Petitioner also filed a habeas petition with the California Supreme Court which argued that his appellate counsel was ineffective because he failed to raise: (1) a direct appeal claim challenging admission of the Northern Patient Group evidence; and (2) a direct appeal claim challenging the admission of prior convictions under section 1101(b). ECF No. 19-6 at 16. This petition was denied by the California Supreme Court with a citation to *In re Clark* and a one line notation that courts will not entertain successive habeas petitions. ECF No. 18-4.

### B. Relevant Federal Law

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 687).

/////

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

C. Analysis

As an initial matter, it is unclear what petitioner means when he claims that appellate counsel did not "federalize" his claims regarding denial of the right to testify and exclusion of impeachment evidence. Both of those claims were, as noted *supra*, raised by his appellate counsel on direct appeal. To the extent petitioner is attempting to argue that his appellate counsel should have fully exhausted both claims for him – that is, that counsel should have gone on to present them to the California Supreme Court – the claim fails. *See Duckett v. Godinez*, 67 F.3d 734, 750 n.8 (9th Cir. 1995) ("The right to counsel extends only through trial and the first appeal of right."), *cert. denied*, 517 U.S. 1158 (1996).

Second, petitioner's claim that his appellate counsel should have raised challenges to the admission of the Northern Patient Group evidence and his prior convictions under section 1101(b) is procedurally barred. The California Supreme Court denied the petition raising these claims with a citation to *In re Clark* and a notation that successive petitions would not be entertained. As this court discussed above, Clark is an adequate and independent state procedural ground. And petitioner has not shown that this court's failure to consider those claims would result in the sort of "miscarriage of justice" that militates an exception to the procedural bar.

Finally, petitioner cannot demonstrate that his counsel was inadequate for failing to raise a bifurcation claim on direct appeal. Petitioner has failed to demonstrate that, had his appellate counsel raised such a claim, the outcome of his appeal would have been different. It bears noting that the state superior court, in adjudicating a subsequent habeas petition raising such a claim, rejected it. ECF No. 18-9 at 2. And, as noted above, there is clearly established federal law entitling him to such bifurcation. Thus, this claim also fails.

/////

CONCLUSION

For all the reasons explained above, the state courts' denial of petitioner's claims was not objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).

Accordingly, it is ORDERED that:

1.     The Clerk of Court shall substitute Shawn Hatton as respondent to this action; and

2.     The Clerk of Court shall randomly assign a United States District Judge to this action.

Further, it is hereby RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  July 30, 2019.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE